1   THE RUDD LAW FIRM
    A Professional Corporation
2   Christopher L. Rudd (SBN 130713)
    Email: clrudd@ruddlawpc.com
3   Jinny A. Cain (SBN 291049)
    Email: jcain@ruddlawpc.com
4   15233 Ventura Boulevard, Suite 320
    Sherman Oaks, CA 91403
5   Telephone:    (310) 457-4072
    Facsimile:    (310) 359-0258
6
    Attorneys for Plaintiff STEPHEN R. ENOS
7

8

9              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10                   FOR THE COUNTY OF LOS ANGELES

11

12   STEPHEN R. ENOS, as an            CASE NO.    BC 6 1 4 0 9 5
     individual
13                       Plaintiff     VERIFIED COMPLAINT FOR
                                       TRADEMARK INFRINGMENT, TRADE
14          vs.                        DRESS INFRINGEMENT,
                                       CANCELLATION OF TRADEMARK
15   LIVE NATION, INC., a Delaware     REGISTRATIONS, UNFAIR
     Corporation, INSOMNIAC HOLDINGS,  COMPETITION AND PRELIMINARY
16   LLC, a California Limited Liability AND PERMANENT INJUNCTIVE
     Corporation, INSOMNIAC, INC. a California RELIEF
17   Corporation, PASQUALE ROTELLA, an
     individual residing in California, and DOES
18   1-20                              DEMAND FOR JURY TRIAL

19                       Defendants.

20

21

22

23

24

25

26

27

28

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAR 17 2016

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

Plaintiff STEPHEN R. ENOS, professionally known as "STEVE ENOS," alleges:

## PARTIES

1. Plaintiff Stephen R. Enos ("Enos"), professionally known as Steve Enos, was at all times relevant herein, an individual resident in the County of Los Angeles, State of California.

2. On information and belief, defendant Live Nation, Inc. ("Live Nation") is a Delaware corporation with its principal place of business in the County of Los Angeles, State of California.

3. On information and belief, defendant Insomniac Holdings, LLC ("IH") is a California limited liability company with its principal place of business within the County of Los Angeles, State of California.

4. On information and belief, defendant Insomniac, Inc. ("II") is a Nevada corporation with its principal place of business within the County of Los Angeles, State of California.

5. On information and belief, defendant Pasquale Rotella ("Rotella") is an individual resident in the County of Los Angeles, State of California.

6. Although the exact relationship among Rotella, IH, and II is unknown, Plaintiff believes that II was Rotella's operating company and that IH is under the control of both Rotella and Live Nation in some combination.

7. Plaintiff lacks sufficient information to segregate acts as between II and IH and therefore collectively refers to these entities as "Insomniac."

8. Plaintiff Enos is informed and believe and based thereon alleges that the fictitiously named defendants sued herein as Does 1 through 20, and each of them, are, in some manner, responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously-named defendants, whether individual, corporate, or otherwise are presently unknown to Plaintiff, and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named defendants when the same have been ascertained. For convenience, each reference to a named defendant herein shall also refer to defendants Does 1 through 20.

9. Plaintiff is informed and believe and based thereon alleges that the Defendants were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners,

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1    principals, and employers of the remaining Defendants, and each of them are, and at all times

2    herein mentioned were, acting within the course and scope of that agency, license, partnership,

3    employment, conspiracy, ownership, or joint venture. Plaintiff is further informed and believe

4    and based thereon allege that the acts and conduct herein alleged of each of the Defendants were

5    known to, authorized by, or ratified by the other Defendants, and each of them.

6    <center>**FACTS COMMON TO ALL COUNTS**</center>

7    10. In about 1987, Enos began promoting and performing as a Disc Jockey or "DJ" selecting,

8    mixing, and creating the music played at various Electronic Dance Music ("EDM") parties in

9    Los Angeles County, and elsewhere, just as EDM was emerging as a separate musical genre and

10   gaining popularity. By 1990, he was already a well- known Promoter/DJ in the Los Angeles

11   EDM scene. In 1990 alone, Enos promoted or performed at multiple EDM events.

12   11. Enos appeared professionally as Steve Kool-Aid, Mr. Kool-Aid or DJ Kool-Aid. A web

13   link to music created by Enos, performing as Kool-Aid, active as of March 2, 2015, is

14   http://simfonik.com/audio/mr-kool-aid-mickeys-mental-side-a.mp3.

15   12. Upon information and belief, Enos' use of "Kool-Aid" as a stage name led to a trend of

16   using EDM stage names among EDM DJ's that still continues.

17   13. By 1990, both to attract existing EDM fans to their shows and performances and to gain

18   new fans, Enos and others in the Los Angeles EDM scene competed to invent new and ever-

19   more-creative names for EDM events. In the wake of the twentieth anniversary of the

20   Woodstock Music Festival in 1989, and in *homage* to the "psychedelic" band names and art

21   works of the late 1960's and early 1970's, such names and art became popular in connection

22   with EDM events. Enos had already promoted events with such names in the Los Angeles EDM

23   scene.  Attached as **Exhibit 1** are true and correct copies of relevant pages from the book,

24   "Classic Rock Posters" by Dennis Loren and Mick Farren (2013), featuring works by Enos.

25   14.  Because Enos was promoting six to seven EDM events per year during this period and

26   performing as a DJ at many more, and because each event Enos promoted required substantial

27   planning; significant time, at least several months, elapsed between the time an event was

28   conceived and the time that event actually took place. The logistical challenges posed by events

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1    varied with the size and theme of the event.

2        15. In or around mid-1990, recognizing that due to the widely differing themes of the EDM

3    events he was promoting, Enos decided to "brand" his varied and numerous EDM events under

4    one name or umbrella so his EDM fans would know that, despite widely differing names,

5    themes, and locations, the events were, in fact, promoted by Enos, performing as Kool-Aid.

6        16. In late 1990, Enos formed Double Hit Mickey. Starting around New Years' Eve of 1990,

7    Enos began referring to all his events as Double Hit Mickey events, and by mid-1991, Enos and

8    Mr. Gary Richards became partners in DHM, later forming Double Hit Productions, Inc. They

9    first collaborated on Magical Mickey's Holy Water Adventure, held at Wild Rivers Water Park

10   in or about May of 1991, and then again on the first Electric Daisy Carnival ("EDC"), held in

11   August, 1991 in Chino, California ("Chino EDC").

12       17. In about 1990, Enos first invented the name "Electric Daisy Carnival" while living with

13   several other people, including Alisa Loftin, and Linda Cumming, in a loft called the Santa Fe

14   Lofts, located at 5th St. and Main St. in downtown Los Angeles.

15       18. Enos, performing as Kool-Aid, originally thought of the name "Happy Hippos Electric

16   Daisy Carnival," but soon thought it better to split "Happy Hippos Electric Daisy Carnival" into

17   two events, "Happy Hippos Electric Circus," and "Electric Daisy Carnival." Happy Hippos

18   Electric Circus took place in a circus tent in December of 1990, while Electric Daisy Carnival

19   took place outdoors with carnival rides and attractions in August of 1991.

20       19. The Chino EDC was the first Electric Daisy Carnival event and was attended by

21   approximately three to four thousand people. A true and correct copy of a flier for that event is

22   attached hereto as Exhibit 2.

23       20. The Chino EDC was groundbreaking in many ways and is still copied by EDC events

24   promoted by Rotella, Insomniac and Live Nation. Upon information and belief, the first EDC

25   was the first large, outdoor, EDM event. It was also groundbreaking in featuring multiple

26   outdoor sound stages and in emphasizing a carnival theme, with outdoor carnival rides, such as a

27   huge Ferris wheel and other rides, along with two huge "Moon Bounce" houses, carnival

28   performers such as a "Bearded Fat Lady" and a "Fortune Teller," and costumed "Club Kid"

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

3
**VERIFIED COMPLAINT**

1    performers appearing in the audience throughout the event, some of whom are still hired to

2    perform up to this year.

3      21. Pleased with the success of the first EDC, Enos and DHM planned another EDC that took

4    place among the schedule of other events produced by Enos and DHM in 1992. The 1992 DHM

5    events included: February's Mickey's Mind Arcade, April's Double-Up Mickey, June's

6    Mickey's Holy Water Adventure, August's Magical Mickey's Electric Daisy Carnival, and

7    October's Magical Mickey's Haunted Mansion. The second Enos DHM Electric Daisy Carnival

8    was held in August of 1992 in Palmdale on Avenue M and 160th Street, on property that was

9    owned by Enos' friend Paul Graham.

10      22. Thereafter, Enos and DHM continued to use the Electric Daisy Carnival trademark and

11    tradename in connection with other DHM events, and in fliers promoting Enos performances,

12    such as Cherryland, Polar Magicka and Aurora in subsequent years, and continuing through the

13    present. True and correct copies of materials reflecting those uses are attached hereto as

14    **Exhibit 3.**

15      23. Through usage and its distinctive event format, Electric Daisy Carnival attained a

16    distinctive meaning and came to be associated with shows and events produced by plaintiff.

17      24. Rotella initially assisted in or participated with Enos and DHM in promoting DHM's

18    events, including EDC events.

19      25. In late 1996, Rotella approached Enos, as witnessed by Tom Allain and Richard

20    Hamilton, and asked for permission to use the Electric Daisy Carnival name and format. Enos

21    firmly declined, telling Rotella, in word to the effect he should "come up with [his own] name".

22      26. Nevertheless, some months later, in early 1997, Enos became aware that despite being

23    denied permission to use the Electric Daisy Carnival trademark, Rotella was distributing

24    materials purporting to promote an Electric Daisy Carnival event.

25      27. Enos, through his attorney, initially sent Rotella a series of "cease and desist" letters.

26    However, Enos eventually agreed to license the EDC trademark and tradename to Rotella and

27    Insomniac on mutually agreeable terms and conditions.  This license ("License") was oral.

28      28. The terms of the License provided that Enos would receive publicity from Rotella and

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD, SUITE 120
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1  Insomniac in the form of internet credit throughout the use of the EDC trademark and that Enos

2  would be regularly consulted by Defendants, and that Enos would be permitted to initiate

3  necessary controls to assure the safety of all EDC events for the well-being of attendees.

4      29. From 1997, through mid-2013, Enos acted as licensor and regularly monitored the usage

5  of the EDC trademark and continued to supply Defendants with advice concerning safety of

6  attendees. At the same time, and consistent with the terms of the license, Rotella and Insomniac

7  acknowledged the license and provided the required publicity and accepted Enos' demands with

8  respect to use of the trademark and the safety of attendees.

9      30. The trademark license was initially oral but, as described below, it was memorialized

10  through subsequent conduct of Enos, Rotella and Insomniac.

11      31. For years, Rotella and Insomniac acknowledged the license of the EDC trademark,

12  announcing to the world on Insomniac's website that: "The name usage was acquired by

13  Insomniac's partner Philip Blaine. *This refers to the name borrowed from Steve Kool-Aid's*

14  *original creation from several years prior whom Philip knew through his colleague Gary*

15  *(Steve's partner) at 1500 Records."* A true and correct copy of that Insomniac website posting

16  confirming Insomniac and Rotella had "borrowed" the name from Enos, since removed, is

17  attached hereto as **Exhibit 4.**

18      32. After Rotella and Insomniac licensed the EDC trademark, electronic dance music and

19  events gained in popularity. Likewise, the EDC trademark became increasingly popular, as

20  Rotella and Insomniac held Electric Daisy Carnival festivals throughout the United States and

21  elsewhere, all under the acknowledged license from Enos. Insomniac has admitted that EDC is a

22  well-known trademark as defined by trademark laws.

23      33. In early May of 2013, Plaintiff learned that Rotella and/or Insomniac were engaged in

24  conduct inconsistent with the EDC trademark License. Although the details were and continue

25  to be unknown, Plaintiff learned that one or more of the Defendants was claiming to own the

26  EDC name and was planning on selling or possibly conveying the trademark to a third party,

27  Live Nation.

28      34. Once Plaintiff learned of the facts alleged in the preceding paragraph, he engaged counsel

1 | who discovered that Defendants had registered the EDC trademark with the United States

2 | Trademark Office.

3 |     35. Plaintiff believed and continues to believe that Defendants' act of registering the

4 | trademark was grounds for terminating the license.  On May 11, 2013, Enos commenced a

5 | cancellation proceeding before the United States Trademark Trial and Appeal Board.

6 |     36. On May 22, 2013, Plaintiff's agent and attorney notified Defendants in writing that the

7 | License was terminated as of that date and that the Defendants could no longer use the EDC

8 | trademark (the "Cease and Desist Letter").

9 |     37. On June 14, 2013, nearly one month later, Defendants responded by written

10 | correspondence through their agent and attorney, Gary Kaufman, Esq. ("the Kaufman Letter").

11 | A true and correct copy is attached hereto as **Exhibit 5.**

12 |     38. The Kaufman Letter stated that Defendants would not cease or desist using the EDC

13 | trademark.

14 |     39. Plaintiff contends that all usage by Defendants of the EDC trademark subsequent to the

15 | Kaufman Letter are unlawful infringing acts.

16 |     40. On information and belief, the wrongfully obtained trademark registration of EDC was

17 | transferred from II to IH which is believed to be under the dominion and control of Live Nation.

18 |     41. It is unknown to Plaintiff whether the Kaufman Letter was furnished by Defendants to

19 | Live Nation or whether the letter was concealed by Rotella and Insomniac.

20 |     42. On information and belief, while possibly initially unaware of the Kaufman Letter, by

21 | late June of 2013, Live Nation, through its agents, had actual knowledge of the Kaufman Letter

22 | and thereafter acted in concert with Insomniac to infringe Plaintiff's rights.

23 |     43. On information and belief, subsequent to June 2013, Live Nation has acted in concert

24 | with Rotella and Insomniac; and has promoted and profited from the unlawful use of the EDC

25 | trademark all to their mutual profit.

26

27

28

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1    49.   Plaintiff is informed and believe and based thereon allege that because subsequent to

2    the date of the Kaufman Letter, the Defendants committed the acts alleged above with

3    knowledge of Plaintiff's prior rights to, and use of, Plaintiff's rights, and with the intent to trade

4    on Plaintiff's rights, this case is exceptional under 15 U.S.C. § 1117(a), entitling Plaintiff to

5    treble damages, and also to the recovery of his attorney's fees.

6    50.   Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from

7    any further commercial use of Plaintiff's trademark and trade dress.

8    51. Because of Defendants legal status as licensee, they are estopped from challenging the

9    validity of Plaintiff's ownership of the EDC trademark.

## SECOND CAUSE OF ACTION

**(California Trademark and Trade Dress Infringement – Against All Defendants)**

52. Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained

in Paragraphs 1 through 43 and 45 through 51, as though fully set forth herein.

53. Plaintiff developed the EDC trade mark and affiliated trade dress and used the trademark

and trade dress continuously both directly and through his licensee.

54. As of the Kaufman Letter, Defendants or some of them began to use Plaintiff's EDC

trademark and affiliated trade dress unlawfully and thereby infringed Plaintiff's rights under the

common law of California.

55. As licensee until the issuance of the Kaufman Letter, Defendants are estopped from

contesting the validity of Plaintiff's trademark rights to EDC.

## THIRD CAUSE OF ACTION

**(Cancellation of Federal Trademarks, 15 USC § 1119 – Against Insomniac Holdings, LLC)**

56. Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained

in Paragraphs 1 through 43, 45 through 51, and 53 through 55 as though fully set forth herein.

57. This cause of action relates to federal registrations 3777422 (Electric Daisy Carnival) and

4090760 (EDC).

58. Plaintiff believes that trademark EDC has no significance other than as an acronym for

Electric Daisy Carnival and is used by Defendants solely to represent the trademark Electric

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 81403
(310) 457-4072

## FIRST CAUSE OF ACTION

### (Trademark Infringement/ Trade Dress Infringement/ False Association

### Lanham Act, 15 U.S.C. § 1125(a) –Against All Defendants)

44.     Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained in Paragraphs 1 through 43, as though fully set forth herein.

45.     The EDC trademark and trade dress have been extensively advertised and promoted for many years by Plaintiff and his licensee in connection with EDM entertainment and related services. As a result of this advertising and promotion, the EDC name and associated trade dress are recognized as famous and distinctive within the meaning of the U.S. trademark law, including 15 U.S.C. § 1125 and §1127.

46.     Defendants' use, and continuing use, in interstate commerce of Plaintiff's trademark in connection with the Defendants' companies, products and services constitutes a violation of 15 U.S.C. § 1125(a), in that it creates a false association between the Plaintiff and the Defendants' companies, products and services, and a false designation of origin as to the goods and services advertised, marketed, promoted, distributed, offered for sale, and sold by the Defendants. Defendants' use of the Plaintiff's rights are likely to confuse, mislead and/or deceive the consuming public and trade by creating the false impression that the Defendants' companies, products and services are or were approved, sponsored, endorsed, guaranteed by and/or are in some way affiliated or associated with the Plaintiff.

47.     Defendant's use, and continuing use, in interstate commerce of Plaintiff's trademark EDC in connection with Defendants' companies, products, and services also constitute a false or misleading description or representation in interstate commerce, in violation of 15 U.S.C. § 1125(a).

48.     As a direct and proximate result of the conduct of the Defendants, the Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a), to the recovery of: (1) Defendants' profits from the sale of their products and services; (2) any damages sustained by Plaintiff as a result of the Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (3) Plaintiff's cost of suit.

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1   Daisy Carnival.

2       59. Trademark 3777422 was registered with the United States Patent and Trademark Office

3   on April 20, 2010.

4       60. Trademark 4090760 was registered with the United States Patent and Trademark Office

5   on January 24, 2012.

6       61. On information and belief, the applicant for both 3777422 and 4090760 was defendant

7   Rotella.

8       62. On information and belief, based on public records, Rotella assigned ownership of both

9   3777422 and 4090760 to one or both of the Insomniac entities after the date of the Kaufman

10  letter.

11      63. At the time that Rotella applied for registration of trademarks 3777422 and 4090760 until

12  the date of the Kaufman letter, Rotella was a licensee of Enos and had no legal right to register

13  the trademarks he had licensed.

14      64. At the time that Rotella applied for registration of the trademarks 377422 and 4090760,

15  Plaintiff had no reason to believe that his licensee was unfaithful or had engaged in this unlawful

16  activity.

17      65. Plaintiff did not discover Rotella's misconduct until approximately May of 2013, when

18  Plaintiff first became aware that Rotella was in the process of selling some or all of Rotella's

19  interest in Insomniac. At that time, Plaintiff was first put on notice to conduct an investigation of

20  Rotella's and Insomniac, Inc.'s conduct. Thereupon, Plaintiff promptly demanded that Rotella

21  and Insomniac cease and desist from representing and claiming ownership of the Electric daisy

22  Carnival and EDC trademarks.

23      66. In response to Plaintiff's demand that Rotella and Insomniac cease and desist, the

24  Kaufman Letter was issued on their behalf at which time Rotella and Insomniac forfeited the

25  trademark licenses and all rights to use the trademarks.

26      67. Subsequent to the Kaufman Letter, Rotella and/or Insomniac, caused the trademarks

27  3777422 and 4090760 transferred to a third entity, IH, or Insomniac Holdings, LLC.

28      68. On information and belief, an entity known as Live Nation, Inc. has an ownership interest

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1   in IH, but Plaintiff has no knowledge or information that Live Nation was aware of the contents

2   of the Kaufman Letter at the time that the letter was sent.  However, Plaintiff believes that Live

3   Nation subsequently learned of Plaintiff's interest in the trademarks prior to the time that it

4   acquired its interest in Insomniac.

5       69. At the time that Rotella applied for registration of trademark 3777422, he was not the

6   rightful owner of the trademark but was Plaintiff's licensee.

7       70. At the time that Rotella applied for registration of trademark 4090760, to the extent that

8   this trademark is found to be an acronym of trademark 3777422, he was not the rightful owner of

9   the trademark but was Plaintiff's licensee.

10      71. At the time of filing the application for trademarks 3777422 and 4090760, Rotella

11  represented to the United States Patent and Trademark Office that he was the rightful owner of

12  the trademarks when he knew that he was not.

13      72. Based on Rotella's false representations and statements made to the United States Patent

14  and Trademark Office, both registrations are subject to cancellation.

15                    **FOURTH CAUSE OF ACTION**

16  **(California Unfair Competition, Business & Professions Code § 17200 et seq. – Against All**

17                          **Defendants)**

18      73. Plaintiff repeats, re-alleges, adopts and incorporates each and every allegation contained

19  in Paragraphs 1 through 43, 45 through 51, 53 through 55, and 57 through 72 as though fully set

20  forth herein.

21      74. Defendants have engaged in and continue to engage in unlawful, fraudulent and unfair

22  business practices as the term is defined in Section 17200 of the California Business and

23  Professions Code, which includes state or federal "unlawful, unfair or fraudulent business act or

24  practice."

25      75. Defendants' unlawful, unfair and fraudulent business acts or practices include violations

26  of state and federal trademark law, unlawful registration of Plaintiff's trademark, refusal to

27  acknowledge termination of the license extended by Plaintiff to Defendants and repudiation of

28  the existence of the license between Plaintiff and one or more of the Defendants.

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD, SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

1    76. All of the foregoing constitute unlawful business practices by Defendants in violation of

2    California Business and Professions Code § 17200 *et seq.*

3    77. Plaintiff is without an adequate remedy at law.

4

5    **WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

6    <u>AS TO THE FIRST CAUSE OF ACTION</u>

7    1.  General and special damages in accordance with proof at trial, together with interest

8        thereon at the maximum legal rate;

9    2.  Treble damages in an amount according to proof at the time of trial;

10   3.  An award of Plaintiff's fees;

11   4.  A preliminary and permanent injunction prohibiting the Defendants and their affiliated

12       companies from any further commercial use of Plaintiff's trademark and trade dress

13       rights.

14   <u>AS TO THE SECOND CAUSE OF ACTION</u>

15   1.  General and special damages in accordance with proof at trial, together with interest

16       thereon at the maximum legal rate;

17   2.  Treble damages in an amount according to proof at the time of trial;

18   3.  An award of Plaintiff's fees;

19   4.  Preliminary and permanent injunction prohibiting the Defendant's and its affiliated

20       companies from any further commercial use of Plaintiff's trademark and trade dress.

21   <u>AS TO THE THIRD CAUSE OF ACTION</u>

22   1.  Cancellation of Federal Trademark Registrations 3777422 (Electric Daisy Carnival) and

23       4090760 (EDC).

24   <u>AS TO THE FOURTH CAUSE OF ACTION</u>

25   1.  Restitution of all funds unlawfully acquired by Defendants for use of Plaintiff's

26       trademark and trade dress subsequent to the termination of the license on or about May

27       22, 2013 and no later than the date of the Kaufman Letter;

28   2.  A preliminary and permanent injunction prohibiting the Defendants and their affiliated

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD SUITE 320
SHERMAN OAKS CALIFORNIA 91403
(310) 457-4072

1    companies from any further commercial use of Plaintiff's trademark and trade dress.

2    **AS TO ALL CAUSES OF ACTION**

3    1. For all costs of suit incurred herein, and;

4    2. For such other and further relief as the Court may deem to be just and proper.

5    Dated: March 16, 2016          THE RUDD LAW FIRM, a. P.C.

6

7

8                               By: Christopher L. Rudd
                                Attorney for Plaintiff STEPHEN R. ENOS

9

10

11

12

13

14                          **DEMAND FOR JURY TRIAL**

15

16    Plaintiff hereby demands a trial by jury.

17    Dated: March 16, 2016          THE RUDD LAW FIRM, a P.C.

18

19

20                                 By: Christopher L. Rudd
                                Attorney for Plaintiff, STEPHEN R. ENOS

21

22

23

24

25

26

27

28

**THE RUDD LAW FIRM, A P.C.**
16323 VENTURA BLVD. SUITE 330
SHERMAN OAKS, CALIFORNIA 91403
(310) 487-4072

<u>VERIFICATION</u>

The undersigned, for himself declares:

I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated: March 16, 2016

_____
STEPHEN ENOS

THE RUDD LAW FIRM, A P.C.
15233 VENTURA BLVD. SUITE 320
SHERMAN OAKS, CALIFORNIA 91403
(310) 457-4072

**VERIFIED COMPLAINT**

# EXHIBIT 1



WITH THE UN-SWEET'N'D RETURN OF
LOLLIPOP LEIGH AND SUGAR DADDY SEAN
AT OUR DEAR MARSHA'S FRONT DOOR.
ONCE INSIDE WITNESS TOMAS BLISS AND THE
"BALDY BUNCH" DO THEIR THING ON THE BED.
DJ's MR. KOOL-AID (STEVE) AND MICHAEL
(ALICE'S HOUSE, THROUGH THE LOOKING GLASS, AQUARIUS)
SUPERSONIC SOUND BY CHRIS COMBS
SPECIAL FILMING OF "THE MYTH OF HOLLYWOOD"
A SWEDISH DOCUMENTARY AND YOU'LL BE IN IT!

## THIS IS A PRIVATE PARTY
### INVITATON ONLY
### $10 ADMISSION

# SATURDAY MAY 19th

FOR DIRECTIONS GO TO 5th AND ALAMEDA (BEHIND THE GAS STATION)
FURTHER INFO (213)261-1850



top left  Ian Swift has had a long association with Gilles Peterson and the London jazz scene, first designing the Talkin' Loud logo and then a proliferation of record sleeves, flyers, and posters that comprised a who's who of British jazz (and beyond), including this poster for the Talkin' Loud system at the Fridge in London in 1992.

screen left  The designer, grinned...



Swift has had a long
with Gilles Peterson and the
scene, first designing the
ogo and then a proliferation
ves, flyers, and posters that
who's who of British jazz
, including this poster for
d parties at the Fridge in
2.

**BOTTOM LEFT** The designer, promoter, and
DJ (who also happened to be the Mr.
Kool-Aid of flyer legend) of this event was
the multitasking Stephen Hauptfuhr. This
party, from May 1990, was a series
promoted by Hauptfuhr when he was still
in his teens. Twenty years hence, LA
resident Hauptfuhr is still throwing
interesting parties, though these days
without the assistance of either Mr.
Kool-Aid or Marsha Brady.



# ROCK POSTERS

1952 TO 2012



# EXHIBIT 2

MR.KOOL-AID   GARY OF SERMON

the creators of

MICKEY'S HOLY WATER ADVENTURE

## PRESENTS THE GREATEST SHOW ON EARTH



THIS EVENT WILL BE AT AN ALL NEW LOCATION AS WE TAKE L.A. TO NEW HEIGHTS ON

### MICKEYS FULL SIZE (4 STORY HIGH!)



WHEEL

DARE TO EXPERIENCE THE POWER OF



THE TWISTING TORNADO RIDE

---

**WITH DJ'S**

**MR.KOOL-AID**
**MICHAEL COOK**
**JON WILLIAMS**
**DESTRUCTO ELI STAR**

MIKE MESSEX SEAN PEERRY

---

**THRILL TO THE SIGHTS OF!**

SHI SHOO KOO
THE FIRE BREATHING MAN
AND THE BEARDED LADY
COME TAME TONY THE 30 FOOT TIGER
MEET ZOL TAR THE FOR TUNE TELLER
COME EXPLORE MICKEYS MA GIC CASTLE
TWO MASSIVE MOONBOUNCES AND A GUESS YOUR WEIGHT BOOTH



# EXHIBIT 3





A Free Gathering in
Celebration of the
Sagittariun Full Moon

# SATURDAY
# DEC. 13th

This gathering of friends
will be outdoors, so dress
accordingly - be prepared
& come have a good time

Magicka is: A self Contained
party unit. Including our
own Tents, sound, lighting &
visuals. Next spring with the
Sugartwist kids (Denver, CO.)
we will be traveling around
the States and eventually to
Germany's Love Parade 98

DJ's
Kool-Aid
Thee-o
Tom Allain
Jon Mark

Drum 'n Bass
Deacon
solus
E-sassin

Performing LIVE
BASSLAND
MIKE FIX

THE

CIRCUS

Peace Love & Respect
to all those of you
dedicated to the
phuture!

213.368.4823
714.804.5608
619.492.8651

Water-Fire-Earth Air
C B-DAY C.K.I



That girl invites you all to take part in her Birthday celebration and the welcoming of the winter season.

# AURORA
## DECEMBER 3RD

Orchestrating the Festivities

## DJ JOSH
S.F. (the Gathering, Move)

## MILES MAEDA
Chicago

## JOHN KESSAN
Denver

## MR. KOOLAID
LA (Double Hit Mickey, EDC)

and St Louis's Illuminator
## ASTROBOY

Ambient Room featuring LA's
# SUNKISSED PROJECT

Creating a Northern Light Exposure
## EYEGASM

Super Sound provided by
## DIVERSIFIED AUDIO

Mind Expanding, Energy Boosting
Smart Bar stuff, brought to you by
## GET SMART

That Girl would like to thank all the kids in St Louis as well in all of our neighboring cities for their support and postive contributions to our events and the Nationwide Family as a whole.

St. Louis
314-995-0513

Denver
303-575-1449

Chicago
312-690-1764

Ohio
543-495-4071

Nashville
615-780-3730

Indianapolis
307.899.3100

Memphis
904.363.9831



"Super jumpin juice Jack-n Djs"
Experemental Techno Guru
from LA's Double Hit Mickey - EDC

# dj Kool-Aid

Koln, Germany-Sugar Twist

# Manuel

NYC King Size Prod

# Skwid Boy

Nitro (Love Parade Germany)

X-zaki (Kerplunk SugarTwist)

Live Performance

**foreskin500** (Mile high pornstars)

### Attractions

'hit us dot nd ... da 'sorry' The beat'ng we we feelin'
'ted way by Syphon Syrcle, zelwn & Foreskin500

Peteslit, ummer  vrepe'di d ll stach in by Jean Lellers
ac Colvi unt HOSP Girl city HS:DJ

Introducing Lounge for 21 and up
Acid Lounge w/dj Lizy   Lane Olbka

Kerplunk and Disco 2000 celebutants
Peeking Pussy(vulod cest sweet n sour dish)
Arnck Heater (mile high star fucker) Kid cyber tyre
Shandalaria (Big time T and A)
RAW-B (southside corner DRUNK)
Becky blewhard (the name sys ALL)
UGN (supermodel 2001)
Tuesday (Denvers finest ?)
tRon(king of klub stick licks)

$6 presale tickets available @ UZI
508 E Colfax & Fashion Nation

## 10pm till 5am

tickets also available at door

much Love Respect and Liberation to:
mom & pops, peeling pussy, shandalaria
terry herkots, michael dig, skvidboy, rich late,
richie raccon, ira ludoid, rune hayden, all vegans,
STREET people, die hard clubbers and drag queens
Arick Heater

Secret Paths to Cherryland

(303) 575 5640    (303) 575 1232

(303) 575 1185    (303) 575 5680

# EXHIBIT 4



# EXHIBIT 5

THE KAUFMAN LAW GROUP

A PROFESSIONAL CORPORATION

1901 AVENUE OF THE STARS

SUITE 1010

LOS ANGELES, CALIFORNIA 90067

TEL (310) 286-2202

FAX (310) 712-0023

June 14, 2013

VIA EMAIL: clrudd@c2lawgroup.com
& U.S. MAIL

Christopher L. Rudd, Esq.
C2 Law Group, P.C.
16255 Ventura Blvd., Suite 925
Encino, CA 91436

      Re:    Stephen R. Enos - Cease and Desist Demand re Electric Daisy Carnival

Dear Mr. Rudd:

As you know, this office represents Insomniac, Inc. and Pasquale Rotella, owner of the valid registered trademarks Electric Daisy Carnival and EDC, U.S. registration nos. 3777422 and 4090760 respectively (the "EDC Marks"). This follows up on our recent telephone conversations and responds to your cease and desist letter of May 22, 2013, your email of June 6, 2013 containing Mr. Enos' demand for monetary compensation, and your email of June 13, 2013 referencing Mr. Enos' efforts to register infringing trademarks for Electric Daisy Carnival in Australia, Canada and Brazil.

Please be advised that given the timing of your client's claims, the true facts and your June 13, 2013 email's indication that Mr. Enos will be going to the media with his claims, we view Mr. Enos' actions as nothing more than a shakedown.

Mr. Rotella first registered the Electric Daisy Carnival mark over ten (10) years ago and first began using the mark in commerce nearly fifteen (15) years ago, yet your client remained silent. Only now, after rumors of a potential multi-million dollar deal for a stake in Insomniac have hit the Internet, has Mr. Enos decided to come out of the woodwork and claim an ownership interest in my clients' brands.

However, assuming for the sake of argument that your client ever had rights to the Electric Daisy Carnival mark (which we do not concede), he had either 1) abandoned those rights by the time he allegedly gave a license to Mr. Rotella in or after 1995; or 2) granted a naked license, as Mr. Enos has admitted that he knew full well of Insomniac and Mr. Rotella's use of the marks since 1997, yet has never exercised one iota of control over Insomniac or Mr. Rotella's use. Furthermore,

THE KAUFMAN LAW GROUP
A PROFESSIONAL CORPORATION

Christopher L. Rudd, Esq.
6/14/2013
Page 2 of 2

Mr. Enos has never once used "EDC" in commerce.  Mr. Enos' claims are meritless – Mr. Rotella owns the EDC Marks.

Therefore, please be advised that 1) my clients absolutely **will not cease or desist** using their valid registered trademarks; and 2) your client's settlement demand is **rejected**.  There will be no counteroffer.

To make matters worse, your client has now filed a bad faith application to register the Electric Daisy Carnival marks in Australia.  Your June 13, 2013 email states that he has also filed similar applications in Canada and Brazil, but we find no evidence of this.  In any case, Mr. Enos' awareness of the international association of these marks with Mr. Rotella and Insomniac means that any assertions of ownership Mr. Enos is likely to make to the trademark registration authorities of these other countries would be fraudulent, and your client may be assured that those applications will be vigorously opposed.  The fact that these applications came so hot on the heels of your conversation with me on June 4, 2013, together with your June 13 reference to Mr. Enos' potentially fielding media requests, only strengthen our conclusion that Mr. Enos has taken these actions for the purposes of strong-arming my clients into a monetary settlement.

Mr. Enos should understand that creating this type of mischief will not motivate my clients to pay him money.  My clients take these matters very seriously and will vigorously protect and defend their intellectual property rights, both before the Trademark Trial and Appeal Board and in the courts.  So, let me state this in no uncertain terms - should your client attempt to use the EDC Marks in any way, Insomniac and Mr. Rotella will exercise any and all available remedies against Mr. Enos and any of his co-conspirators.  In addition, should Mr. Enos make any false statements of ownership in the EDC Marks to anyone, media or otherwise, my clients are fully prepared to sue him for damages, including punitive damages, as Mr. Enos' recent actions clearly constitute malice.

Please govern yourselves accordingly.

Very truly yours,

GARY JAY KAUFMAN

GJK:ch

ENOS000941

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )  ss.
COUNTY OF LOS ANGELES   )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 15233 Ventura Boulevard, Suite 320, Sherman Oaks, CA 91403.

On **March 31, 2016**, I served a copy X / original ☐ of the foregoing document(s) described as **VERIFIED COMPLAINT OF TRADEMARK INFRINGEMENT, SUMMONS, and NOTICE OF ACKNOWLEDGMENT** on the interested parties in this action addressed as follows:

    Live Nation, Inc. c/o Corporate Creations
    1430 Truxton Ave.
    Bakersfield, CA 93301

    Insomniac Holdings, LLC c/o Corporate Creations
    1430 Truxton Ave.
    Bakersfield, CA 93301

\_\_\_    By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

\_\_\_    **BY MAIL (CCP §1013(a)&(b)**): I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 15233 Ventura Boulevard, Suite 320, Sherman Oaks, CA 91403, in the ordinary course of business.

\_X\_\_    **BY FEDERAL EXPRESS (CCP §1013(a)&(b)):**  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with Federal Express. Under that practice such envelope(s) is deposited with Federal Express on the same day this declaration was executed, with postage thereon fully prepaid at 15233Ventura Boulevard, Suite 320, Sherman Oaks, CA 91403, in the ordinary course of business.

\_\_\_\_    **BY EMAIL (CCP § 1010.6; CRC Rule 2.251(g)):** I transmitted the above-stated document(s) and an unsigned copy of this declaration from my computer (electronic notification address **clrudd@ruddlawpc.com** located at The Rudd Law Firm, P.C., 15233 Ventura Boulevard, Suite 320, Sherman Oaks, CA 91403, to the interested parties in this action whose names and e-mail addresses are listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. Service by e-mail or electronic transmission was agreed upon based on a court order or an agreement of the parties to accept service.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 31, 2016 at Sherman Oaks, California.

*Kellee Elizabeth Smith*
Kellee Elizabeth Smith

APR 0 1 2016